STATE of Wisconsin, Plaintiff-Respondent,

v.

Stanley JAGIELSKI, Defendant-Appellant.

Court of Appeals

*No. 89-2387-CR. Submitted on briefs January 7, 1991.—Decided February 26, 1991.*

(Also reported in 467 N.W.2d 196.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Robert P. Rusch* of *Rusch & Rusch Law Office, S.C.* of Medford.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Donald J. Hanaway,* attorney general, and *Paul L. Barnett,* assistant attorney general.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J.  Stanley Jagielski appeals a judgment convicting him of sexually assaulting his four-year-old stepdaughter, B.J., contrary to sec. 940.225(1)(d), Stats. (1985–86). Jagielski argues that the trial court abused its discretion concerning two evidentiary rulings. Jagielski challenges the trial court's (1) admitting B.J.'s statements to a social worker concerning the assault under the residual hearsay exception, sec. 908.03(24), Stats.; and (2) denying evidence that B.J. also accused other men of the same, or similar, assaults. We conclude that the trial court properly exercised its discretion with respect to permitting the social worker's testimony of B.J.'s statements. However, because the trial court abused its discretion when it precluded testimony of others accused, we reverse and remand for a new trial.

B.J. is Jagielski's stepdaughter and lived with Jagielski and her mother. Because Jagielski is visually handicapped, two friends, Larry Shepard and Howard Grefe, who are partially disabled, spent considerable time at the home, providing assistance and companionship.[1]

The allegations of assault arose when B.J.'s natural father brought her to his home for a visit. After B.J. told her father that Jagielski had molested her, he then took her to a local hospital emergency room where the doctor found no evidence of sexual intercourse. Her father also arranged for an interview with B.J. and Terry Ross, a social worker for the Price County Social Services Department.

---

[1]The record is not clear as to the living arrangements of these two men or the nature and extent of their disabilities. However, Shepard, who visited the home frequently, was found incompetent to stand trial for a charge identical to Jagielski's charge. Grefe, who resided at B.J.'s home, cooked and did some housekeeping and chores.

Ross interviewed B.J. for approximately one and a half hours. The interview was tape-recorded and later transcribed. During the interview, B.J. initially accused Shepard of assaulting her and her sister. She also accused Grefe of sexually assaulting her. Although she initially denied sexual contact with Jagielski, she eventually stated that he had sexual contact with her.

A complaint charged Jagielski with one count of sexual assault, alleging that he, "while unclothed, lay on top of [B.J.] (DOB 6-20-83) while [B.J.] was unclothed and the defendant touched the vaginal area of [B.J.] with the defendant's penis." At the preliminary hearing, B.J. would not testify that Jagielski had sexual contact with her.[2] The initial charge was dismissed for lack of probable cause at the preliminary hearing.

Following the dismissal, the state issued a second identical charge. At the second preliminary hearing, Ross, who had not testified at the previous hearing, reported that B.J. had told her that Jagielski had sexually assaulted her. In addition, Ross testified that B.J. told her that "Larry" and "Junior" (Howard Grefe) had also assaulted her. Jagielski was bound over for trial.

At trial, over Jagielski's hearsay objection, the court permitted Ross to testify as to statements B.J. made to her concerning sexual contact by Jagielski. The court, however, deleted all references to the other men, concluding that such evidence was barred by sec. 972.11(2), Stats. (the rape shield law). Although both B.J. and Jagielski testified that no sexual contact occurred, the jury returned a guilty verdict.

Jagielski appealed his conviction and, upon agreement of the parties, we remanded the matter to the trial

---

[2]The record indicates that B.J. sat on her father's lap during the lengthy questioning process and that a shield was placed between her and Jagielski.

court for a post-trial hearing and determination in light of *State v. Pulizzano,* 155 Wis. 2d 633, 456 N.W.2d 325 (1990), dealing with a defendant's sixth amendment right to present prior sexual assault evidence. The trial court reached the same result and excluded evidence of other assaults.

Evidentiary issues are addressed to trial court discretion. *State v. Pharr,* 115 Wis. 2d 334, 342, 340 N.W.2d 498, 501 (1983). Upon review, the question is "whether the trial court exercised its discretion in accordance with accepted legal standards and in accordance with the facts of record." *Id.* We may independently review the record to determine if it provides a basis for the trial court's exercise of discretion. *Id.* at 343, 340 N.W.2d at 502. When an evidentiary issue requires the application of a statute to a set of facts, a question of law is presented and our review is de novo. *Pulizzano,* 155 Wis. 2d at 643, 456 N.W.2d at 329.

Jagielski contends that the trial court abused its discretion when it admitted, under the residual hearsay exception testimony, B.J.'s statements to Ross concerning the assault. We disagree. The residual hearsay exception, found in sec. 908.03(24) and 908.045(6), Stats., is an appropriate method to admit children's statements in sexual assault cases if they are otherwise proven sufficiently trustworthy. *State v. Sorenson,* 143 Wis. 2d 226, 243, 421 N.W.2d 77, 84 (1988).

In making an assessment of the admissibility of a child's statements under the residual exception, the trial court should consider five factors: (1) the attributes of the child making the statements, including age, comprehension, verbal ability and motivations; (2) the person to

whom the statements were made, the relationship to the child and potential motivations to fabricate or distort; (3) the circumstances under which the statements were made, including the relation to the time of the assault, the availability of a person in whom the child might confide and other contextual factors relating to the statements' trustworthiness; (4) the content of the statements, noting any sign of deceit, falsity and whether they reveal a knowledge of matters not ordinarily attributable to a child of similar age; and (5) other corroborating evidence, such as physical evidence of an assault, statements made to others and opportunity or motive of the defendant. *Id.* at 245–46, 421 N.W.2d at 84–85. The weight accorded each factor may vary, and no single factor is dispositive. All the factors must be evaluated to determine whether the statements possess the requisite "circumstantial guarantees of trustworthiness." *Id.* at 246, 421 N.W.2d at 85.

The trial court reviewed B.J.'s statements to Ross admitted at the preliminary examination and concluded that the statements were admissible after consideration of the *Sorenson* factors. The record reveals a basis for the trial court's decision. The victim was four years old at the time of the assault and at least the same age level in her comprehension and verbal ability. "It has been noted previously that a child at such a young age is unlikely to review an incident of sexual assault and calculate the effect of a statement about it." *Id.* at 246, 421 N.W.2d at 85 (citations omitted).

The second factor requires examination of the person to whom the statements are made. The record indicates that Ross had experience with child sexual abuse cases. The record shows no motive to fabricate or distort statements made by B.J.

Also, the circumstances support the statements' trustworthiness. Although B.J. was unable to pinpoint the date of the assault, she reported it within two to eight weeks of when it occurred. "Contemporaneity and spontaneity of statements are not as crucial in admitting hearsay statement of young sexual assault victims under the residual exception." *Id.* at 249, 421 N.W.2d at 86.

The statements' content must also be examined. B.J.'s statements show knowledge of sexual activity beyond the ordinary familiarity of a child her age. However, Ross suggested that this may be in part due to leading questions she put to B.J. and that the child was tired.[3] Nevertheless, B.J. volunteered sufficiently graphic accounts of sexual contact to suggest the source of her knowledge was within the realm of her experience.

Finally, the court must consider other corroborating circumstantial evidence. Although there was no physical evidence of an assault, B.J. had made statements to others. Although the statements were conflicting, the interview itself contained conflicting statements. Examining the factors as a whole, we conclude that the trial court reasonably exercised its discretion when concluding B.J.'s statements to the social worker possessed sufficient guarantees of trustworthiness to be admissible.

Next, we turn to Jagielski's argument that the trial court abused its discretion by excluding evidence of B.J.'s allegations of similar assaults by others. Jagielski

---

[3]At the preliminary hearing, Ross testified that she did not believe B.J. when she answered "yes" to the question whether intercourse occurred: "[D]uring that part in my interview [B.J.] was becoming very, very tired, and I think—Well, I knew that she just wanted to get the interview over with and wanted to leave my office, and she may have answered 'yes' to that question so that she could go."

argues that this evidence is crucial to his defense in order to explain alternative sources of B.J.'s knowledge of sexual activity, her changed behavior, her fear of returning home and complaints of pain. He contends that her entire interview should be admitted in order to evaluate the weight and credibility of her specific accusations against him. He claims that the exclusion of this evidence denied him his rights to confrontation and compulsory process. We agree.

Historically, evidence of a victim's prior sexual conduct was considered relevant to the issues of consent and general credibility.[4] In 1976, sec. 972.11(2), Stats., was enacted to bar admission of a victim's prior sexual conduct unless the conduct falls within certain enumerated exceptions, none of which pertain here. *Pulizzano,* 155 Wis. 2d at 643, 456 N.W.2d at 329.[5] The purposes of sec.

---

[4]This common-law was overruled by the Wisconsin Supreme Court in *State v. Stanislawski,* 62 Wis. 2d 730, 216 N.W.2d 8 (1974).

[5]Section 972.11(2) provides:

(a) In this subsection, "sexual conduct" means any conduct or behavior relating to sexual activities of the complaining witness, including but not limited to prior experience of sexual intercourse or sexual contact, use of contraceptives, living arrangement and lifestyle.

(b) If the defendant is accused of a crime under s. 940.225, 948.02, 948.05 or 948.06, any evidence concerning the complaining witness's prior sexual conduct or opinions of the witness's prior sexual conduct and reputation as to prior sexual conduct shall not be admitted into evidence during the course of the hearing or trial, nor shall any reference to such conduct be made in the presence of the jury, except the following, subject to s. 971.31(11):

1. Evidence of the complaining witness's past conduct with the defendant.

2. Evidence of specific instances of sexual conduct showing the source or origin of semen, pregnancy or disease, for use in determining the degree of sexual assault or the extent of injury suffered.

972.11(2) are to prevent the defendant from harassing and humiliating the victim with irrelevant evidence of prior sexual conduct or reputation, to prevent the jury from being misled or confused by collateral issues and to promote effective law enforcement by avoiding witness/victim harassment. *Id.* at 647, 456 N.W.2d at 331.

Section 972.11, Stats., has on its face withstood constitutional challenges based upon the sixth amendment.[6] *Pulizzano,* 155 Wis. 2d at 647–48, 456 N.W.2d at 331. However, "sec. 972.11, as applied, may in a given case impermissibly infringe upon a defendant's rights to confrontation and compulsory process." *Id.* Whether a defendant is so deprived is a question of constitutional fact, to be reviewed de novo. *Id.* at 648, 456 N.W.2d at 331.

In order to establish a constitutional right to present prior sexual assault evidence, a defendant must show, through an offer of proof, the following: (1) that the prior act clearly occurred; (2) it resembles the present case; (3) the prior act is clearly relevant to a material issue; (4) the evidence is necessary to the defendant's case; and (5) the probative value outweighs the prejudicial effect. *Id.* at 656, 456 N.W.2d at 335. Once the defendant makes this showing, the court must determine whether a compelling state interest requires the evidence to be excluded. *Id.* at 656–57, 456 N.W.2d at 335.

---

3.  Evidence of prior untruthful allegations of sexual assault made by the complaining witness.

[6]The sixth amendment provides in part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him; [and] to have compulsory process for obtaining witnesses in his favor . . .."

We conclude that Jagielski made this showing. B.J.'s allegations of sexual contact with Shepard and Grefe were made during the same interview as those of Jagielski. The state brought identical charges against Shepard.[7] The acts B.J. described with the others were nearly identical to those with which Jagielski was charged, and, in fact, at least some were alleged to have happened at the same time and place.[8] These other sexual contacts are clearly relevant to material issues: for example, an alternative source of B.J.'s knowledge of sexual activity, an alternative explanation of her changed behavior and her fear of returning home.

Jagielski should also be permitted to present evidence of the other assaults in order to allow the jury to have before it B.J.'s entire interview with Ross, rather than isolated edited portions. The potential prejudice, if any, is greatly outweighed by the probative value of the evidence. Because the victim is a child, consent is not an issue and the concept of chastity does not apply to notions of general credibility. There is little chance that the jury would be confused or misled by the admission of the entire interview. To the contrary, failure to permit evidence of the entire interview and the surrounding circumstances of the assault would allow for a greater

---

[7]We note that false allegations are not excluded by sec. 972.11, Stats. The trial court made a finding that the other acts clearly occurred. Because they are admissible under the *Pulizzano* analysis, we do not address Jagielski's argument that the allegations against Grefe are false.

[8]Because we conclude that the other sexual contact evidence is admissible under the *Pulizzano* analysis, and because the parties do not brief the issue, we do not address whether by its plain language, sec. 972.11, Stats., applies to simultaneous assaults.

degree of confusion.[9]

We also conclude that no compelling state interest requires that the evidence be excluded. As we previously discussed, this is not a case where a defendant is seeking to harass and humiliate a victim with prior instances of sexual conduct and reputation evidence. Rather, Jagielski seeks to bring out the victim's entire statement and all the facts and circumstances surrounding the assault.[10]

*By the Court.*—Judgment reversed and cause remanded.

---

[9]Jagielski construes some of the statements B.J. made during the interview to be allegations of sexual conduct on the part of B.J.'s mother. We disagree with this characterization. In any event, the entire interview, including statements concerning B.J.'s mother's conduct, is admissible.

[10]Because of our result in this case, we do not address Jagielski's remaining arguments for reversal.