STATE of Wisconsin, Plaintiff-Respondent,†

v.

Gerald W. STEVENS, Defendant-Appellant.

Court of Appeals

*No. 92-0611-CR. Submitted on briefs June 3, 1992.—Decided September 2, 1992.*

(Also reported in 490 N.W.2d 753.)

†Petition to review granted.

107

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Stephen M. Glynn* and *Dean A. Strang* of *Shellow, Shellow & Glynn, S.C.* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle,* attorney general, and *Marguerite M. Moeller,* assistant attorney general.

Before Nettesheim, P.J., Brown and Snyder, JJ.

BROWN, J. This permissive appeal of a nonfinal order deals with the scope of the hearsay exception for statements against interest that "make the declarant an object of hatred, ridicule, or disgrace." Section 908.045(4), Stats. The appeal also raises the issues of whether the exception in sec. 908.045(2) for recent "perceptions" is broad enough to include a declarant's aural "perception" of another person's oral statement, and what the scope is of the residual exception in 908.045(6). We conclude that the evidence submitted in the preliminary hearing following a charge of burglary against Gerald W. Stevens was not admissible under any of these exceptions.

After a preliminary hearing, Stevens was bound over for trial on charges of arson, burglary and receiving or concealing stolen property. The trial court granted a stay of the proceedings in order for Stevens to appeal whether the testimony of the best friend of his deceased thirteen-year-old stepdaughter, concerning the stepdaughter's hearsay declaration that Stevens stole stereo equipment, was properly admitted at the preliminary hearing. We granted leave to appeal the nonfinal order.

At the preliminary hearing, Melissa Strzyzewski testified that while she and Stevens' stepdaughter, Melissa Stevens, were walking to school together in September 1991, Melissa Stevens said that the previous night Stevens told her he had stolen some stereo equipment.[1] Melissa said that Stevens told her he had noticed an unlocked door when he was doing her paper route,

---

[1]Because "Melissa" can refer to both the Strzyzewski girl and the Stevens girl, we have opted to refer to Melissa Strzyzewski as Strzyzewski and Melissa Stevens as Melissa for clarity's sake.

finished the route, went home and got his car, went back to the unlocked house, loaded his car with stereo equipment, and drove to a friend's apartment in Two Rivers to store the stereo equipment for about a month. Strzyzewski testified that she saw new stereo equipment at Melissa's house about a month after this conversation.

Concerning how the conversation got started, Strzyzewski testified that Melissa "just brought it up" during their walk in September but asked Strzyzewski not to say anything about this to others. However, after Melissa was found dead in December 1991, Strzyzewski heard on television that Stevens was arrested on charges having to do with stolen stereo equipment. Strzyzewski then told her parents about the September conversation with Melissa and recounted the story to police during one of her interviews with them.

At the close of the preliminary hearing, the trial court rejected the state's argument that Melissa's declaration to Strzyzewski was a statement of recent perception under sec. 908.045(2), Stats., and it did not address the state's argument concerning the residual exception in sec. 908.045(6). However, the court concluded that Melissa's declaration did qualify as a statement against interest under sec. 908.045(4). The trial court reasoned that the statement was against Melissa's interests because she put herself at risk that if Strzyzewski told anyone about these accusations and they were reported to the police, Melissa "would have been placed in a position where at a minimum in her family, she would have been the object of ridicule and disgrace." The trial court eventually bound Stevens over for trial on the charges of arson, burglary and receiving or concealing stolen

property.[2]

Stevens argues that Strzyzewski's testimony contained second level hearsay which was inadmissible. His position is this: If Strzyzewski had testified that he made these statements directly to her, we may assume, for purposes of this appeal, that his alleged underlying statement to Strzyzewski would be admissible as a statement against penal interest or as an admission of a party opponent under sec. 908.01(4)(b), Stats. However, because Strzyzewski was testifying about something Stevens is supposed to have said not to *her* but to *Melissa,* under circumstances that are unclear and with details contrary to the indisputable facts, Melissa's purported statement is unreliable. He argues that the trial court made an error of law by applying the "statement against interest" exception in sec. 908.045(4), Stats., to Melissa's statement. He also argues that Melissa's statement does not fall under the alternate hearsay exceptions urged by the state, namely the "statement of recent perception" exception in sec. 908.045(2) or the residual exception in 908.045(6).

The decision of a trial court on the admission of hearsay evidence is within the trial court's discretion and will not be reversed unless discretion is abused or the court's decision is based on an erroneous view of the law. *State v. Buelow,* 122 Wis. 2d 465, 476, 363 N.W.2d 255, 261 (Ct. App. 1984). A court exceeds its discretion if the discretionary choice is based upon an error of law. *Schulz v. Ystad,* 155 Wis. 2d 574, 599–600, 456 N.W.2d 312, 322 (1990). The question of admissibility of hearsay evidence is one of law. *See Christensen v. Economy Fire*

---

[2]Stevens concedes in his brief that for purposes of this appeal the charge of receiving or concealing stolen property does not hinge on Strzyzewski's testimony.

*& Casualty Co.,* 77 Wis. 2d 50, 55, 252 N.W.2d 81, 84 (1977). The issue here is admissibility under one or more of the hearsay exceptions. Thus, we are not bound by the trial court's conclusions on the admissibility of the hearsay testimony, and as a matter of law we decide it *de novo. See State v. Sauceda,* 168 Wis. 2d 486, 492, 485 N.W.2d 1, 3 (1992).

Neither our supreme court nor this court has previously discussed that part of the "statements against interest" hearsay exception in sec. 908.045(4), Stats., relating to statements making the declarant "an object of hatred, ridicule, or disgrace."[3] Wisconsin is one of only ten states or territories that recognizes this "social interest"[4] category of statements against interest.[5] The

[3]In *Muller v. State,* 94 Wis. 2d 450, 463, 289 N.W.2d 570, 576-77 (1980), our supreme court held that a murder victim's deposition taken during a custody proceeding was admissible under sec. 908.045(4), Stats. In discussing why the deposition was admissible, the supreme court concluded that the victim's statement saying she had sex with a man other than her husband "made her an 'object of disgrace'." *Id.* at 463, 289 N.W.2d at 577. *Muller* did not address the limits of the social interest rule or its rationale. This court briefly mentioned the exception in *State v. Sorenson,* 135 Wis. 2d 468, 472, 400 N.W.2d 508, 510 (Ct. App. 1986), *rev'd on other grounds,* 143 Wis. 2d 226, 421 N.W.2d 77 (1988), where we refused to apply the exception to a seven-year-old girl's statement to a social worker about her father's sexual assault because there was no evidence the girl had a subjective appreciation of the risk of her father's disapproval. Similarly, in *State v. Buelow,* 122 Wis. 2d 465, 477, 363 N.W.2d 255, 262 (Ct. App. 1984), after discussing how a witness' statements were against her penal interests, we mentioned that the statements would also make her the object of hatred. This is the extent of the case law on the social interest exception in Wisconsin.

[4]"Social interest" is not a term that appears in the Wisconsin statutes, but we will use this term as shorthand for a declar-

Federal Rules of Evidence do not recognize this category. Thus, the case law is sparse.

Stevens argues that there are two legal questions to resolve before a court can conclude that a hearsay statement meets the social interest exception in sec. 908.045(4), Stats. These two questions concern the magnitude and the source of the potential hatred, ridicule and disgrace. In other words, how great must the potential social disapproval be to pose an unacceptable risk for the declarant and whose disapproval matters?

All hearsay exceptions are based on the idea that, even though the hearsay declarant is unavailable for cross-examination, the declarant's out-of-court statement can be admitted as evidence because the statement itself contains sufficient indicia of reliability so that cross-examination of the declarant is not necessary. The reliability of those hearsay statements falling under the "statement against interest" exception in sec. 908.045(4), Stats., is based on the psychological assumption that persons do not make statements which are damaging to themselves unless satisfied for good reason that they are true. *Buelow,* 122 Wis. 2d at 477, 363 N.W.2d at 262. For the social interest category of this

---

ant's interest in avoiding "hatred, ridicule, or disgrace." *See* sec. 908.045(4), Stats.

[5]The exception for statements against "social interest" has been adopted only in Arkansas, California, Kansas, Maine, Montana, Nevada, New Jersey, North Dakota, Wisconsin and Puerto Rico. *See* Ark. R. Evid. 804(b)(3); Cal. Evid. Code, sec. 1230 (West 1992); Kan. Stat. Ann. sec. 60-460(j) (1991); Me. R. Evid. 804(b)(3); Mont. R. Evid. 804(b)(3); Nev. Rev. Stat. Ann. sec. 51.345(1)(d) (Michie 1991); N.J. R. Evid. 63(10); N.D. R. Evid. 804(b)(3); sec. 908.045(4), Stats.; P.R. Laws Ann. tit. 32, sec. 64(B)(3) (1983).

exception, the damage risked by "a reasonable person in the declarant's position" is that he or she would be subject to "hatred, ridicule, or disgrace" if the statement became known. *See* sec. 908.045(4).

Moreover, there is both an objective and a subjective pole to the social interest exception. The objective pole is the determination that the declarant actually faced a risk of hatred, ridicule or disgrace. The subjective pole concerns the declarant's appreciation of the risk of hatred, ridicule or disgrace. *See* sec. 908.045(4), Stats.; *State v. Sorenson*, 143 Wis. 2d 226, 241, 421 N.W.2d 77, 83 (1988).

Concerning the subjective pole, Stevens argues there is no evidence that Melissa felt any risk of disapproval from her family or anyone else, since she "just brought [the statement] up" to Strzyzewski and did not appear disturbed or agitated. Furthermore, he argues that Melissa's request to Strzyzewski not to repeat the statement could have been for the purpose of avoiding detection of a falsehood, just as it could have indicated an acknowledgement of the risk of social disapproval.

Stevens likewise contends that the objective pole of the exception is not satisfied because Melissa's family was the only conceivable social unit whose disapproval she objectively risked by her statement. Stevens asserts that Melissa's family is too small a social unit to be the measure of the kind of social disapproval which would guarantee the reliability of a hearsay declaration. Stevens also maintains that Melissa's statement would not have subjected her to hatred, ridicule or disgrace in the larger social community because it is Stevens himself who would receive the social disapproval, not Melissa.

According to Stevens, the reason the family's reaction cannot serve as the objective pole for this exception

is because the risk of social disapproval must be universally recognized to serve as a guarantee of reliability for hearsay. Stevens contends that families are too idiosyncratic and their reactions are too statistically uncertain to allow the potential reaction of the family unit to be the measure of the hatred, ridicule or disgrace that will assure reliability. Families are usually seen as a source of unconditional love. Family members are often so forgiving of each other that falsehoods or accusations do not have the potential to engender hatred, ridicule or disgrace. Stevens goes on to argue that, at the very least, the disapproval is unpredictable.

Stevens also argues that, even if the family were not considered too small and unpredictable a social unit to be the measure of social disapproval, the only meaningful family disapproval Melissa risked was from a community of one, namely, her mother. This is because any potential disapproval by Stevens himself must be discounted as a guarantor of reliability since his disapproval of an accusation against him is to be expected, whether the accusation is true or false. If his potential disapproval were permitted to guarantee the reliability of Melissa's statement, this would transform the social interest exception into a rule permitting any hearsay that is accusatory since an accused person will always feel hatred, ridicule or disgrace for the accuser. Concerning potential disapproval by Melissa's mother, Stevens contends the state did not show either that Melissa feared her mother's hatred or that reasonable daughters withhold statements for fear of their mother's hatred.

In contrast, the state argues that familial disapproval is not the only disapproval Melissa risked. She also risked disapproval from the wider community. The state notes that teenagers are frequently embarrassed by the actions of their parents and that teenagers are quick

115

to make negative comments about a peer's parents. Moreover, some adults caution their children against associating with schoolmates whose parents are known to have some criminal involvement. Additionally, people are often judged based on who or what their parents are. The state also contends that looking only at the fear of her mother's reaction to a lie is sufficient to make Melissa's statement reliable.

Stevens also turns to case law dealing with the exception. He claims that courts considering the exception have been wary of expanding its scope and that no court has approved admission of a statement where purely familial interests were at stake. He points to *United States v. Dovico,* 261 F. Supp. 862 (S.D.N.Y. 1966), *aff'd,* 380 F.2d 325 (2d Cir. 1966), *cert. denied,* 389 U.S. 944 (1967), as the leading case on the exception. There, the court ruled that prisoner Gangi's statement to another inmate, exculpating Dovico on charges of selling cocaine, was not admissible as a statement against Gangi's social interests in the prison. Stevens notes that Congress cited *Dovico* in rejecting the social interest exception for the Federal Rules of Evidence. Stevens also points to *Heddings v. Steele,* 526 A.2d 349 (Pa. 1987), a Pennsylvania Supreme Court decision rejecting the exception in a situation similar to this one where the only risk of social disapproval was familial.

The state responds that *Dovico* and *Heddings* are not applicable here because in those cases the respective courts were being asked to fashion a social interest exception when the legislature had not provided one. In Wisconsin, the legislature has made that choice for us by including the social interest exception in sec. 908.045(4), Stats. The state also notes that the intermediate appellate court in *Heddings* permitted the social interest exception, and the state directs us to that opinion for

reasoning in support of the exception. *See Heddings v. Steele,* 496 A.2d 1166 (Pa. Super. Ct. 1985).

Stevens cites cases from jurisdictions where the legislatures have adopted a social interest exception.[6] He points to a New Jersey case where the court did not permit the social interest exception when the social disapproval was familial. *See State v. Conyers,* 275 A.2d 721, 726 n.1 (N.J. 1971). The state counters that the *Conyers* court merely addressed the exception in a footnote without applying it to the case. In another New Jersey case, the court did not address the exception because it concluded that the harmless error doctrine applied. *See State v. Hunt,* 558 A.2d 1259, 1276-77 (N.J. 1989).

We conclude that Melissa's risk of hatred, ridicule or disgrace was too attenuated and uncertain to guarantee her statement's reliability. In the larger community, Melissa was likely to receive praise rather than disapproval if her statement became known. A negative reaction was more likely from Melissa's mother than from the larger community, but not so certain as to give us confidence that Melissa's statement was true. Furthermore, any social disapproval potentially coming to Melissa from her mother is like the disapproval that would come to her from her stepfather. It would simply be based on the fact that she accused her stepfather of wrongdoing. The exception swallows the rule if hearsay testimony can be admitted whenever the declarant faces social disapproval simply for making an accusation. The

---

[6]Stevens notes that in Maine, Montana and Nevada, courts have simply acknowledged the existence of the social interest rule but have not discussed it. *See State v. Fredette,* 462 A.2d 17, 22 (Me. 1983); *Sarsfield v. Sarsfield,* 671 P.2d 595, 600-01 (Mont. 1983); *Sparks v. State,* 759 P.2d 180, 182-83 (Nev. 1988).

accused and those close to the accused will always resent the person who makes the accusation.

We also conclude that the real issue in regard to the social interest exception is not the size of the community that might react with hatred, ridicule or disgrace toward the declarant. Rather, the real issue is the extent of the declarant's personal connection to the activity reported in his or her declaration. Just as is the case for statements against penal or proprietary interest, the social interest exception demands that the declarant have a personal interest in keeping the statement secret. It is that personal interest that guarantees reliability. Without this requirement for personal connection to the event or activity reported in the hearsay statement, the social interest exception would permit the admission of any statement where it can be shown that the declarant will be intensely disliked by someone for making the statement.

Here, Melissa's hearsay statement reported her stepfather's burglary and theft of stereo equipment. Melissa was not involved in the burglary. Furthermore, if Melissa had been involved in her stepfather's actions, her statement would have come under the penal interest exception rather than the social interest exception because burglary has penal consequences. We conclude that it was an error of law for the trial court to admit Melissa's statement under the social interest exception.

We turn now to the state's argument that Melissa's declaration is admissible under sec. 908.045(2), Stats., as a statement of recent perception. The relevant parts of sec. 908.045(2) limit this exception to "[a] statement . . . which narrates, describes, or explains an event or condition recently *perceived* by the declarant." (Emphasis added.) The state argues that *perceived* means "to become aware of through the senses." Thus, because

118

Melissa *perceived* her stepfather's conversation the night before she recounted the story of the burglary to Strzyzewski, Melissa's statement to Strzyzewski described a "recent perception."

The trial court concluded that the exception only applies to "something that happens and is observed and then is put into words by the declarant." The court said that "someone making a statement to another person" would not qualify.

Similarly, Stevens argues that what is *perceived* must be an event or condition, particularly unusual or dramatic events. This is because there will generally be no doubt that an event occurred, and events are subject to corroboration. Stevens continues that if the declarant is allowed to report private statements under this exception, there is no ability to confirm the statements independently.

We conclude that this exception does not apply to the aural perception of an oral statement privately told to a person. Corroboration is the key to reliability of a statement coming under this exception. As Stevens notes, this is not like the present sense impression rule in sec. 908.03(1), Stats., or the excited utterance rule in sec. 908.03(2). There, the guarantee of reliability is immediacy. For a statement of recent perception, the declarant is not available. Reliability depends on the possibility of corroborating the declarant's statement.

Here, the subsequent police discovery of the stolen stereo equipment at Stevens' house and the subsequent testimony by Stevens' friend that Stevens stored the equipment at his apartment in Two Rivers do not corroborate Melissa's statement. Those subsequent events are compatible with Stevens' story that he bought the stereo equipment at a rummage sale as a surprise gift for

his wife. However, the state seeks introduction of Melissa's statement not to show that there was stolen stereo equipment at Two Rivers and at Stevens' house, but to show that Stevens told Melissa he burgled an apartment and stole the equipment. There is no independent corroboration of that admission.

The state's last argument is that Melissa's statement is admissible under the residual hearsay exception in 908.045(6), Stats. Residual hearsay exceptions require the proponent to establish circumstantial guarantees of trustworthiness comparable to those existing for enumerated exceptions. *Sorenson,* 143 Wis. 2d at 243, 421 N.W.2d at 84. Stevens contends that this exception is not a "catch-all" or "near miss" category that permits the admissibility of otherwise unacceptable hearsay. We agree with Stevens. It is for the novel or unanticipated category of hearsay that does not fall under one of the named categories, but which is as reliable as one of those categories. It is intended that the residual hearsay exception rule will be used very rarely, and only in exceptional circumstances. COTCHETT & ELKIND, FEDERAL COURTROOM EVIDENCE 168.2 (1986). In our view, the very words of the rule indicate that the key to using the exception is governed by the circumstances *surrounding the making of the hearsay statement.*

The state implicitly argues that statements of children are just such an unanticipated category of hearsay falling under the residual exception. The state cites *Sorenson,* 143 Wis. 2d at 245–46, 421 N.W.2d at 84–85, and *State v. Jagielski,* 161 Wis. 2d 67, 73–74, 467 N.W.2d 196, 198 (Ct. App. 1991), for five factors that courts should consider in assessing whether a child's statements should be admitted under the residual exception and applies these factors to Melissa's statement.

However, *Sorenson* and *Jagielski* are both sexual assault cases involving small children. Hearsay is admitted in such cases to avoid the psychological scarring attached to forcing a young child to testify about sexual assault, and because the child's lack of motivation to lie and lack of avenues to sexual knowledge other than by firsthand experience make the hearsay reliable. There are no exigencies similar to psychological scarring compelling the admission of Melissa's statement. Additionally, a thirteen-year-old girl could know about a burglary from sources other than her stepfather, and a teenager similarly could have motivation to falsely accuse her stepfather. Therefore, *Sorenson*'s and *Jagielski*'s five factors are not applicable here.

The state also argues that Melissa's statement has the following circumstantial guarantees of trustworthiness. The record does not indicate that Melissa had a motive to lie. She made the statements to her best friend whom she could trust. The spontaneity of the statement suggests that Melissa had no reason to fabricate the story. Stevens' friend in Two Rivers testified that Stevens stored the same stereo equipment at his apartment as police later recovered at Stevens' house.

However, Stevens lists inaccuracies in Melissa's statement that undermine its trustworthiness. The burgled apartment was two blocks from the location Melissa described to Strzyzewski. The burgled apartment was not on Melissa's paper route. A fire was set at the burgled apartment, but Melissa's statement did not mention a fire. The owner of the burgled apartment said he had left the door locked, although he admitted that he sometimes had trouble with the lock, and Melissa's statement was that her stepfather found the door to the apartment he entered unlocked. If Stevens only stored the stolen stereo equipment in Two Rivers for a month, it would

have appeared at his house earlier than Strzyzewski saw it there. There was also the theft of a television and video equipment from the burgled apartment, but Melissa's statement did not mention these items and there is no evidence that they were ever at Stevens' house.

The discrepancies between the actual burglary and the details in Melissa's statement to Strzyzewski lend reliability to the first level of hearsay, namely that Strzyzewski truthfully recounted what Melissa told her. However, the discrepancies cast into doubt the reliability of the second level of hearsay, namely, that Stevens actually told Melissa he stole the stereo equipment. We conclude that Melissa's statement to Strzyzewski does not fall under the residual exception.

Stevens asks that we reverse the burglary and arson bindovers. We do not believe that is the appropriate mandate. It is unclear, absent Melissa's statement, whether there remains sufficient evidence to bind Stevens over on the two charges. The examining judge is "concerned with the practical and nontechnical probabilities of everyday life" in making his or her probable cause determination. *State v. Dunn,* 121 Wis. 2d 389, 397, 359 N.W.2d 151, 154 (1984) (citation omitted). The evidence at the preliminary hearing established that stereo and video equipment was stolen and that fires were set. The trial court concluded that it could reasonably infer that Stevens committed the arson and the burglary based upon Strzyzewski's testimony and the fact that the stolen equipment was found in Stevens' possession. The trial court, not this court, has the discretion to decide whether it may still infer that Stevens probably committed the arson and the burglary. We therefore reverse the trial court's rulings regarding the admission

of Melissa's statements through Strzyzewski and remand for a determination whether probable cause nonetheless exists to bind over on the burglary and arson counts. As regards the receiving and concealing charge, we affirm the bindover and remand for further proceedings consistent with our statutes.

*By the Court.*—Order affirmed in part; reversed in part and cause remanded with directions.