**COURT OF APPEALS
DECISION
DATED AND FILED**

**September 12, 2023**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP2201**

STATE OF WISCONSIN

Cir. Ct. No. **2022ME289**

IN COURT OF APPEALS
DISTRICT III

IN THE MATTER OF THE MENTAL COMMITMENT OF Z. W. L.:

BROWN COUNTY,

    PETITIONER-RESPONDENT,

  V.

Z. W. L.,

    RESPONDENT-APPELLANT.

---

APPEAL from orders of the circuit court for Brown County: TIMOTHY A. HINKFUSS, Judge. *Reversed*.

¶1 GILL, J.[1] Zeb[2] appeals an order extending his involuntary commitment pursuant to WIS. STAT. § 51.20 and an associated order for

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

involuntary medication and treatment. Zeb argues that the circuit court relied on inadmissible hearsay when it found that Zeb is dangerous under § 51.20(1)(a)2.b. and 2.c., and that this error prejudiced him because there was no other evidence to establish his dangerousness.[3] We conclude that the court relied on inadmissible hearsay in finding that Zeb was dangerous, that no exceptions to the hearsay rule applied to permit the admission of the testimony, and that the admission of the hearsay testimony was prejudicial to Zeb. Accordingly, we reverse.[4]

## BACKGROUND

¶2      Zeb was initially committed to a behavioral health facility in Jefferson County in March 2022 for six months, pursuant to WIS. STAT. § 51.20(1)(a)2. Thereafter, venue was transferred to Brown County. Brown County subsequently petitioned for an extension of Zeb's commitment, and in September 2022, the circuit court held a contested hearing on the County's petition.

¶3      Doctor Marshall Bales, the County's examining physician, was the first witness to testify at the extension hearing. Bales testified that Zeb declined to

---

[2] For ease of reading, we refer to the appellant in this confidential matter using a pseudonym, rather than his initials.

[3] In his brief, Zeb erroneously states that he was found dangerous under WIS. STAT. § 51.20(1)(a)2.a. While the circuit court did not specifically identify what subsection it found Zeb dangerous under, we agree with the County that Zeb was instead found dangerous under § 51.20(1)(a)2.b. and 2.c. Nonetheless, the outcome would be the same regardless of the subsection at issue.

[4] An order for involuntary medication and treatment cannot exist without a valid commitment order. *See* WIS. STAT. § 51.61(1)(g). Because we have determined that the order extending Zeb's commitment must be reversed, reversal of the involuntary medication order is also required.

meet with him but that Bales was able to complete his report by reviewing Zeb's records from Jefferson and Winnebago County's detention documents, Bales' own prior reports of his examinations of Zeb, and by speaking to Zeb's father. Based on this information, Bales diagnosed Zeb with a schizoaffective disorder and noted specific incidents where Zeb had exhibited symptoms of that disorder. Bales noted that Zeb was opposed to receiving monthly antipsychotic medication. Bales further testified that he believed Zeb would be a proper subject for commitment if treatment were withdrawn.

¶4 The County moved to admit Bales' report into evidence. Zeb's counsel objected to the admission of Bales' report, claiming that the specific events described in the report were based upon inadmissible hearsay. The circuit court sustained the objection while admitting the nonhearsay portions of the report.

¶5 The County's second and final witness was Jordan Lungstrom, Zeb's case manager. Lungstrom testified that Zeb returned to a mental health facility on May 16, 2022, due to Zeb calling the police and accusing his father of raping Zeb's mother, which was untrue. Lungstrom also stated that Zeb threatened to kill his mother and father. Zeb's counsel objected to this testimony as hearsay. The circuit court overruled the objection, stating "No. 1, [Zeb is] a party opponent. No. 2, [Lungstrom] is a case manager as part of her duties."

¶6 On cross-examination, Lungstrom testified that she had not personally spoken to Zeb regarding the May 16 incident and that she obtained her

knowledge of the incident by reading a crisis center report.[5] The report was never offered or admitted into evidence. Lungstrom further testified that she had never personally witnessed Zeb making a verbal threat to anyone or exhibiting violent behavior. Zeb did not present any witnesses.

¶7     During its closing argument, the County asked the circuit court to find Zeb dangerous based on the May 16 incident and to extend Zeb's commitment. Upon the conclusion of closing arguments, the court again addressed the disputed hearsay testimony regarding the May 16 incident, stating, "I misunderstood. I thought [Zeb] made those statements." The court then stated, "It was his acts that the caseworker reviewed with [Zeb]." The court then reasoned, "I do think being the case worker [Lungstrom] … should and she did discuss this case with [Zeb] because this came up on his case history. I mean, this is what case managers are supposed to do. And to me, that's an exception to any of the hearsay rules."

¶8     Based upon the evidence concerning the May 16 incident, the circuit court subsequently found that Zeb was dangerous under WIS. STAT. § 51.20(1)(a)2.b. and 2.c., and it ordered Zeb's twelve-month recommitment and his involuntary medication and treatment. Zeb now appeals the order extending his commitment and the associated order for involuntary medication and treatment.

---

[5] This report was compiled by a crisis counselor, who collected statements from the police and Zeb.

**DISCUSSION**

¶9      Zeb argues that the circuit court erroneously exercised its discretion when it found Zeb to be dangerous under WIS. STAT. § 51.20(1)(a)2.b. and 2.c. by admitting and relying on Lungstrom's inadmissible hearsay testimony concerning statements made by Zeb.  Specifically, Zeb asserts that Lungstrom's testimony contained at least two levels of hearsay.  First, Lungstrom testified concerning the contents of the written crisis report, and second, that report contained oral statements made by others to the crisis counselor, and that no exceptions apply to either level of hearsay.  Zeb also argues that the admission of the hearsay was prejudicial because the County's admissible evidence against him is insufficient to prove, by clear and convincing evidence, that he is dangerous.

¶10      We review the circuit court's decision to admit evidence for an erroneous exercise of discretion. *State v. Stevens*, 171 Wis. 2d 106, 111, 490 N.W.2d 753 (1992).  A court's discretionary decision will be upheld if the court "examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach." *Appleton Post-Crescent v. Janssen*, 149 Wis. 2d 294, 302-03, 441 N.W.2d 255 (Ct. App. 1989).

¶11      Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  WIS. STAT. § 908.01(3).  Hearsay is inadmissible unless an exception applies.  WIS. STAT. § 908.02.  Hearsay within hearsay is inadmissible unless each part of the combined statements conforms to a hearsay exception.  WIS. STAT. § 908.05.  One exception to the exclusion of hearsay testimony is based upon a

statement that is made by a party opponent and offered against that party. Sec. 908.01(4)(b)1.

¶12    Zeb argues, and the County does not dispute, that the party-opponent exclusion does not apply to Lungstrom's testimony regarding the May 16 incident. Zeb further contends, and the County does not dispute, that there is no "case manager" exception to the rule against hearsay. We agree on both counts.

¶13    Here, Lungstrom's testimony does not fall within the party-opponent exception because Lungstrom did not testify about any discussions that she had with Zeb regarding the May 16 incident. Rather, Lungstrom based her testimony on the content of the crisis center report. The report was drafted by a crisis center counselor and consisted of statements from police officers and Zeb. Because Lungstrom's testimony rests upon two layers of hearsay, there must be an exception for each level of hearsay for Lungstrom's testimony to be admissible. *See* WIS. STAT. § 908.05.

¶14    The party-opponent exception applies to Zeb's oral statements to the police and the crisis worker because Zeb directly made those statements. *See* WIS. STAT. § 908.01(4)(b)1. However, the party-opponent exception does not apply to the report itself. *See **id.*** While Zeb's statements may have been admissible if testified to by the crisis worker or police officers, neither was called to testify at the hearing. *See **State v. Patino***, 177 Wis. 2d 348, 363, 502 N.W.2d 601 (Ct. App. 1993); *see also* § 908.01(4)(b)1. Moreover, there is no "case manager" exception to the hearsay rule enumerated in the statutes or rules adopted by our supreme court. *See* WIS. STAT. §§ 908.01-045.

¶15    The County nonetheless appears to argue that the circuit court did not erroneously exercise its discretion by admitting the hearsay testimony because

it was proffered to show why Zeb returned to the behavioral health facility.[6] We construe this argument as an assertion that the County was not offering the evidence for the truth of the matter asserted.

¶16     We reject this argument. In its closing argument, the County asked the circuit court to find Zeb dangerous based on the May 16 incident, and the court mentioned the May 16 incident in support of its dangerousness finding. Thus, the evidence was clearly offered for that purpose. Additionally, as we discuss below, there is no evidence on which the court could base its dangerousness finding without Lungstrom's testimony regarding the May 16 incident. Thus, the County clearly intended for the court to rely upon—and the court did in fact rely upon—Lungstrom's testimony for the truth of the matter asserted regarding the May 16 incident.

¶17     In response, the County contends that Zeb failed to timely object while Lungstrom testified about the May 16 incident, thereby forfeiting his hearsay objection. The County supports this contention by noting that Zeb's counsel did not object directly after Lungstrom testified about Zeb calling the police but, rather, counsel objected when the County asked Lungstrom what Zeb said to the police. The County asserts that Zeb's counsel only objected to Lungstrom's statement regarding what Zeb said to the police. We disagree.

---

[6] The County also argues that Lungstrom "was simply testifying to the historical record." We reject this argument as undeveloped. *See M.C.I., Inc. v. Elbin*, 146 Wis. 2d 239, 244-45, 430 N.W.2d 366 (Ct. App. 1988). Moreover, the County's argument that Lungstrom was testifying to the "historical record" is unsupported by legal authority. *See Wal-Mart Real Est. Bus. Tr. v. City of Merrill*, 2023 WI App 14, ¶32, 406 Wis. 2d 663, 987 N.W.2d 764 (stating that arguments unsupported by legal authority need not be considered).

¶18 "The purpose of the rule requiring that the grounds for objection be stated on the record is to afford the opposing party and the [circuit] court an opportunity to correct the error and to afford appellate review of the grounds for the objection." *Air Wis., Inc. v. North Cent. Airlines, Inc.*, 98 Wis. 2d 301, 311, 296 N.W.2d 749 (1980). Here, Zeb's counsel alerted the court to the hearsay in Lungstrom's testimony by stating, "I'm just going to object to this line of questioning unless there's a basis to show Ms. Lungstrom has personal knowledge of this, these events." Further, during Lungstrom's cross-examination, Zeb's counsel emphasized that Lungstrom had no personal knowledge of the May 16 incident and had only obtained her information regarding it from the crisis center report. Finally, Zeb's counsel started his closing argument by renewing his objection to Lungstrom's testimony, stating, "I know the court has ruled on that and has already heard the testimony, but I believe that that testimony was multiple layers of hearsay…. So I would object to the court relying on that for the truth of any events that happened that day." Therefore, contrary to the County's argument, Zeb did not forfeit his objection to the hearsay testimony; Zeb's counsel alerted the court to the hearsay evidence in Lungstrom's testimony—not only to the specific question of what Zeb said to the police, but to the entire line of questioning regarding the May 16 incident.

¶19 Accordingly, we conclude that the circuit court erroneously exercised its discretion when it applied the party-opponent and so-called "case manager" exceptions to Lungstrom's testimony. We now turn to whether the admissible evidence presented at the extension hearing was sufficient to support the court's finding that Zeb was dangerous under WIS. STAT. § 51.20(1)(a)2.b. and 2.c.

¶20 Whether the County met its burden of proof to support the extension of Zeb's commitment "presents a mixed question of law and fact. We uphold a circuit court's findings of fact unless they are clearly erroneous. Whether the facts satisfy the statutory standard is a question of law that we review de novo." *See Waukesha County v. J.W.J.*, 2017 WI 57, ¶15, 375 Wis. 2d 542, 895 N.W.2d 783. Given the essential liberty interest at stake in involuntary commitments, due process requires a county to prove its case by clear and convincing evidence. *Addington v. Texas*, 441 U.S. 418, 433 (1979); WIS. STAT. § 51.20(13)(e).

¶21 "In order to involuntarily commit a person pursuant to [WIS. STAT.] ch. 51, the petitioner must demonstrate that three elements are fulfilled: the subject must be (1) mentally ill; (2) a proper subject for treatment; and (3) dangerous to themselves or others." *Sheboygan County v. M.W.*, 2022 WI 40, ¶17, 402 Wis. 2d 1, 974 N.W.2d 733. To prove dangerousness, a county must satisfy at least one of the five standards of dangerousness set forth in WIS. STAT. § 51.20(1)(a)2.a.-e. At issue here is § 51.20(1)(a)2.b., which requires that an individual

> [e]vidences a substantial probability of physical harm to other individuals as manifested by evidence of recent homicidal or other violent behavior or by evidence that others are placed in reasonable fear of violent behavior and serious physical harm to them, as evidenced by a recent overt act, attempt or threat to do serious physical harm.

Also at issue is § 51.20(1)(a)2.c., which requires showing that an individual "[e]vidences such impaired judgment, manifested by evidence of a pattern of

recent acts or omissions, that there is a substantial probability of physical impairment or injury to himself or herself or other individuals."[7]

¶22    "The dangerousness standard is not more or less onerous during an extension proceeding; the constitutional mandate that the County prove an individual is both mentally ill and dangerous by clear and convincing evidence remains unaltered." *Portage County v. J.W.K.*, 2019 WI 54, ¶24, 386 Wis. 2d 672, 927 N.W.2d 509.    WISCONSIN STAT. § 51.20(1)(am) abrogates the requirement of a recent act in an extension hearing when a county shows "that there is a substantial likelihood, based on the subject individual's treatment record, that the individual would be a proper subject for commitment if treatment were withdrawn."  However, a county must still prove *current* dangerousness.  *J.W.K.*, 386 Wis. 2d 672, ¶24.  "It is not enough that the individual was at one point a proper subject for commitment."  *Id.*

¶23    Here, Zeb argues that absent Lungstrom's inadmissible hearsay testimony, the County is unable to prove that he is currently dangerous by clear and convincing evidence.  We agree.

¶24    Lungstrom testified that she has never personally witnessed Zeb make any verbal threats to anyone or exhibit violent behavior toward himself or anyone else.  Bales testified that Zeb would be a proper subject for commitment if treatment were withdrawn, which relieved the County of its burden of showing recent acts that indicate dangerousness.   *See* WIS. STAT. § 51.20(1)(am).

---

[7] Zeb does not dispute that he is mentally ill or that his mental illness is treatable.  The only element of WIS. STAT. § 51.20(1)(a) that is contested is Zeb's dangerousness.  Thus, we analyze only the evidence that is pertinent to Zeb's dangerousness.

However, the County was still required to prove current dangerousness. *See J.W.K.*, 386 Wis. 2d 672, ¶24. Neither Bales' testimony nor Lungstrom's admissible testimony provided evidence that Zeb exhibits a substantial risk of physical harm to himself or others, exhibits impaired judgment, or that Zeb exhibits impaired judgment by a pattern of recent acts for purposes of Wis. Stat. § 51.20(1)(a)2.a.-e.

¶25 Accordingly, we conclude that the evidence presented at the commitment extension hearing was insufficient to support a conclusion that Zeb is dangerous pursuant to Wis. Stat. § 51.20(1)(a)2.a-e. We therefore reverse the order extending Zeb's commitment and the associated order for involuntary medication and treatment. *See Langlade County v. D.J.W.*, 2020 WI 41, ¶¶58-60, 391 Wis. 2d 231, 942 N.W.2d 277 (reversing a recommitment when there was insufficient evidence to support a conclusion that the individual was dangerous).

*By the Court.*—Orders reversed.

This opinion will not be published. *See* Wis. Stat. Rule 809.23(1)(b)4.