# IN RE VARIOUS SEARCH WARRANTS & DOCUMENTARY SUBPOENAS CONCERNING the DEATH OF Michelle M. KOY: The APPLETON POST-CRESCENT, Petitioner-Appellant,

v.

Ruth H. JANSSEN, Clerk of Circuit Court, Outagamie County; William J. Grogan, Outagamie County District Attorney; Philip C. Russell, Outagamie County Coroner; David L. Gorski, City of Appleton Chief of Police; and Richard Davis, City of Appleton Fire Chief, Respondents. [Case No. 87–1446.]

The APPLETON POST-CRESCENT, Plaintiff-Respondent,

v.

Ruth H. JANSSEN, Clerk of Circuit Court, Outagamie County; William J. Grogan, Outagamie County District Attorney; Philip C. Russell, Outagamie County Coroner; David L. Gorski, City of Appleton Chief of Police; and Richard Davis, City of Appleton Fire Chief, Defendants-Appellants.† [Case No. 88–0954.]

Court of Appeals

*Nos. 87–1446, 88–0954. Orally argued December 12, 1988.— Decided February 21, 1989.*

(Also reported in 441 N.W.2d 255.)

† Petition to review denied.

294

For petitioner-appellant-plaintiff-respondent there were briefs by *Eugenia G. Carter, Brady C. Williamson,* and *La Follette & Sinykin,* Madison.

For respondents-defendants-appellants there was a brief by *William J. Grogan,* district attorney, Outagamie County, Appleton.

For respondent-defendant-appellant William J. Grogan there was a brief by *Donald J. Hanaway,* attorney general, and *Thomas J. Balistreri,* assistant attorney general, Madison.

For respondent-defendant-appellant David L. Gorski there was a brief by *Greg J. Carman,* Appleton city attorney, Appleton.

Before Cane, P.J., LaRocque and Eich, JJ.

LaROCQUE, J. This consolidated appeal presents a dispute over limited attorney access to law enforcement records gathered in a homicide investigation solely to better present an open records argument. The Appleton Post-Crescent (the newspaper), first sought through an order to show cause in February, 1987, the release of court records consisting of subpoenaed material and search warrant information relating to the murder of a young Appleton woman on October 13, 1985. The newspaper acknowledged in that proceeding,[1] Judge Michael Gage, presiding, that it "has not challenged, for the moment at least, the court's substantive decision ...." Because Judge Gage released substantially all of the records sought in edited or redacted form, the newspaper's appeal directed at procedural irregularities is moot and we summarily affirm Judge Gage's decision.[2]

In a separate and distinct mandamus action, the newspaper sought the same court records and investigative law enforcement records as well. In the mandamus action, Judge N. Patrick Crooks presiding, the public officials (the government) whose records are sought appeal a decision granting the newspaper's attorney restricted access to the disputed records for the purpose of presenting its case. Except for remand to assure

[1]The court issued the order to show cause without benefit of an underlying action or proceeding. No challenge is raised as to this procedure.

[2]The newspaper quarrels with Judge Gage's refusals to honor a motion to consolidate the two proceedings, to allow preliminary attorney access, and to allow the newspaper's attorney to attend in camera testimony from a police investigator relating to the reasons for secrecy.

297

elimination of certain records subject to a John Doe secrecy order and a modification to eliminate records already released by Judge Gage, we affirm Judge Crooks' order.

The government, first claiming that the court lacked statutory authority to grant any preliminary access, a claim we reject, alternatively perceives several problems with Judge Crooks' procedural methods. We conclude that the problems are largely illusory. They include concern for potential illicit leaks of information inimical to the prosecution; unauthorized access to documents generated by a secret John Doe proceeding in another branch of the circuit court; and an "inherent conflict" between Judge Gage's redacted records and the unedited version released to the newspaper's attorney.[3]

██

Because Judge Gage released certain court records and resolved that issue, mandamus seeking the same records is not available, and Judge Crooks' order should be modified accordingly. We also conclude that the open records law authorizes a discretionary order for limited attorney access only for purposes of case preparation, that the secrecy order for John Doe records can be honored by the mandamus court by granting the government time to review the records, and that the court's carefully circumscribed access order was not an abuse of discretion. We emphasize the fact that neither the circuit court's order nor this appeal determines that the law enforcement records are to be made public.

---

[3]The attorney general advances the argument of lack of statutory authority. The other arguments are those of the Outagamie County district attorney.

Judge Crooks' order excluded transcripts of testimony from any John Doe proceedings and was subject to these limitations:

> A. The newspaper's counsel ... shall review the documents in ... Chambers at the Brown County Courthouse by January 31, 1988;
> B. Defendants shall deliver copies of all of the records to ... chambers on or before January 18, 1988. The Court shall retain the copies until the conclusion of this matter. The originals of the documents shall remain with the defendants;
> C. The newspaper's counsel ... shall begin her review of the documents on January 19, 1988 at 10:00 a.m. and shall continue that process from day to day until the review is completed by January 31, 1988;
> D. The newspaper's counsel ... may not photocopy or remove any of the materials retained under seal, but she may take notes about the documents. If the newspaper's counsel takes such notes, she shall file a copy of the notes with the Court which shall retain them, at least until the disposition of this matter, under seal;
> E. The Outagamie County District Attorney's office and the Appleton City Attorney's office each may ... designate a representative to observe the review by the newspaper's counsel of the materials under seal, but the designee may not review any notes made by the newspaper's counsel;
> F. ... counsel for the newspaper, may discuss the results of her review of the documents with her co-counsel ... and her secretary ... may type the notes and any related materials;
> G. Only one copy of [the attorney's] notes, whether written or typed, shall be in the possession of the newspaper's counsel at any time;

H. The newspaper's counsel shall not in its written submission to this Court or in any other fashion disclose to anyone specific information from the sealed materials that has not already been specifically disclosed by the defendants or by the Outagamie County Circuit Court.

Subject to the modification to exclude court records already released, and a remand to assure the district attorney reasonable time to remove certain John Doe records, we affirm.

The government first maintains that the open records law does not contemplate preliminary access to records. We think it does authorize preliminary access. Section 19.37(1)(a), Stats., provides in part:

If an authority withholds a record ....

(a) The requester may bring an action for mandamus asking a court to order release of the record. The court may permit the parties or their attorneys to have access to the requested record under restrictions or protective orders as the court deems appropriate.

The government reasons that the phrase "may permit *the parties* or their attorneys to have access" (emphasis supplied) demonstrates the legislative purpose to allow access only after a final decision on the merits of public release. It argues that if a party may obtain preliminary access, it renders the statute meaningless. Citing cases decided prior to the present statute, it is also the government's view that the adoption of sec. 19.37 was not intended to change prior law concerning the proper method for releasing records. We agree that no change was intended, but prior case law discloses no precedent resolving the issue of preliminary access.

Section 19.37(1) was created in 1981. The analysis of a bill by the Legislative Reference Bureau is indicative of legislative intent. *State v. Larson,* 133 Wis. 2d 320, 326, 395 N.W.2d 608, 611 (Ct. App. 1986). That bureau stated that: "Under the bill, the requester of a record which is withheld may seek a court order directing release of the record, *as currently permitted.*" LRB analysis of engrossed 1981 Senate Bill 250, found in bill drafting file for ch. 335, 1981 Wis. Laws (emphasis supplied). The only new procedural feature of the law identified by the LRB was the provision for the award of costs, fees, and damages to a successful mandamus petitioner. *Id.*; *see* sec. 19.37(2), Stats.

The government cites *State ex rel. Youmans v. Owens,* 28 Wis. 2d 672, 137 N.W.2d 470 (1965). There, the supreme court said:

> If the person seeking inspection ... institutes court action to compel inspection and the officer depends upon the grounds stated in his refusal, the proper procedure is for the trial judge to examine *in camera* the record or document sought to be inspected. Upon making such *in camera* examination, the trial judge should then make his determination of whether or not the harm likely to result to the public interest by permitting the inspection outweighs the benefit to be gained by granting inspection.
>
> In reaching a determination so based upon a balancing of the interests involved, the trial judge must ever bear in mind that public policy favors the right of inspection of public records and documents, and, it is only in the exceptional case that inspection should be denied. In situations, such as in the instant case, where inspection is sought of a number of documents, the ultimate decision after conducting the balancing test might be to grant inspection

> as to certain of the documents and deny it as to others. If a single record or document is sought to be inspected, and disclosure of only a portion is found to be prejudicial to the public interest, the trial judge has the power to direct such portion to be taped over before granting inspection.

*Id.* at 682–83, 137 N.W.2d at 475 (footnote omitted). The decision gives no indication that Youman's attorney sought preliminary access, and there was no need to address the matter. Thus, while *Youmans* remains unaffected by the current statute, it does not provide guidance on the issue presented here.

The open records law contemplates "restrictions or protective orders" that by their nature are designed to narrow access as the facts of the case dictate. It is certainly conceivable that limited preliminary access even to a party would be appropriate under some circumstances. On the other hand, cases may arise where preliminary access even by the attorney is inappropriate. While access may pose problems if unrestricted or overbroad, there is nothing inherent in the statute's language or its purpose to suggest the practice is universally prohibited.

Alternatively, the government argues that if access is permissible, the circuit court abused its discretion by not first determining the potential dangers of attorney access by conducting an in camera inspection. It argues further that the court did not adequately assure that documents generated out of a John Doe examination were removed from the files.

▬

The court here did not abuse its discretion when it declined an in camera examination. We will sustain a discretionary act if the circuit court examined the relevant facts, applied a proper standard of law, and,

using a demonstrated rational process, reached a conclusion that a reasonable judge could reach. *Loy v. Bunderson,* 107 Wis. 2d 400, 414–15, 320 N.W.2d 175, 184 (1982). A fundamental feature of discretion is the recognition that each case is unique. There may be cases where an in camera inspection is essential at the outset. The district attorney's hypothetical concern that a murder suspect or his attorney may seek entry to an active police file is not remotely suggested by the record here. We recognize that an ongoing police investigation is an important factor in the ultimate decision whether to grant public access to their files. *See* Comment, *Wisconsin Public Records Law,* 67 Marq. L. Rev. 65 (1983).

The circuit court here merely engaged in a presumption that an officer of the court representing the news media would obey its secrecy order. This presumption, backed by the court's power to impose sanctions for contempt of court and potential penalties for violating the code of professional responsibility, constitutes adequate protection under the present circumstances. Further, as the court observed, an informed attorney may assist in presenting a more accurate and balanced picture from which the court will derive its ultimate ruling. "In light of ... overwhelming emphasis upon disclosure, it is anomalous ... that the party with the greatest interest in obtaining disclosure is at a loss to argue with desirable legal precision for the revelation of the concealed information." *Vaughn v. Rosen,* 484 F.2d 820, 823 (D.C. Cir. 1973), *cert. denied,* 415 U.S. 977 (1974). This lack of knowledge "seriously distorts the traditional adversary nature of our legal system's form of dispute resolution." *Vaughn,* 484 F.2d at 824. Finally, it is apparent that the circuit court

knew that the file contained sensitive information, which if leaked, could cause serious consequences. Where the requester has a personal connection with the investigation, discretion may call for an in camera inspection either prior to or in lieu of attorney access. It was unnecessary that the court examine the precise details of the investigation here because its decision is only prefatory. An in camera examination is not a prerequisite to a valid order in every case. We conclude, under the facts here, that the restrictions placed upon the newspaper's attorney are adequate to ensure continued secrecy pending a final decision.

We recognize that methods other than direct attorney access are available and, depending on the circumstances, preferable. Numerous federal courts and several states have adopted a procedure known as *Vaughn* indexing. In *Vaughn,* the federal court required agencies wanting to withhold records from public inspection to divide the documents into manageable segments, submit to the court and the requesting party an analysis of the content of each segment as descriptively detailed as possible without actually compromising the secret nature of the information, and specify the reasons why disclosure of each withheld segment is against the public interest. *Id.* at 826–27. This practice is apparently widely accepted in the federal courts. *See, e.g., Ingle v. Department of Justice,* 698 F.2d 259, 263–65 (6th Cir. 1983) (surveying decisions of various federal circuit courts). Several state courts have adopted similar versions. *See, e.g., Wilson v. Freedom of Information Comm'n,* 435 A.2d 353, 362 (Conn. 1980); *Cranford v. Montgomery County,* 481 A.2d 221, 230–31 (Md. 1984); *Loigman v. Kimmelman,* 505 A.2d 958, 964–67 (N.J. 1986). The *Vaughn* indexing method presents two

advantages: It reduces the chance of unauthorized disclosure in sensitive cases, and it places the burden of sifting and searching where it belongs, on the agencies and not the judiciary.

The John Doe records present a different problem. Judge Crooks unequivocally excluded from review any testimony or records originating in an independent John Doe proceeding in another branch of the circuit court.[4] The government now expresses concern that it lacked time to identify and retrieve those records from the mass of documents accumulated in the course of the investigation. The exact extent of the government's problem is unclear from the briefs, although reference is made to some 900 pages of documents subject to release.

Because this matter must be remanded for a new time schedule in any case, we direct the circuit court to give consideration, after hearing from the parties if it chooses, to decide what constitutes a reasonable time for the district attorney to review the records and remove those originating from the John Doe proceeding.

*By the Court.*—The attorney access order is modified to exclude those records already released in redacted form by an earlier order; the matter is remanded to the circuit court for entry of a new time schedule; both orders are otherwise affirmed.

---

[4]The written order drafted by the newspaper does not reflect the court's ruling from the bench. That ruling provided that, in addition to excluded testimony, records originating in the John Doe were to be excluded prior to attorney access.