COURT OF APPEALS
DECISION
DATED AND FILED

August 28, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2025AP500**

STATE OF WISCONSIN

Cir. Ct. No. 2023ME14

IN COURT OF APPEALS
DISTRICT IV

IN THE MATTER OF THE CONDITION OF T.L.M.:

GRANT COUNTY,

    PETITIONER-RESPONDENT,

  V.

T.L.M.,

    RESPONDENT-APPELLANT.

---

APPEAL from an order of the circuit court for Grant County: CRAIG R. DAY, Judge. *Affirmed*.

¶1 KLOPPENBURG, J.[1] T.L.M. appeals the order extending her commitment and requiring her to be involuntarily medicated under WIS. STAT.

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(d) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version.

ch. 51.[2] She argues that, at the bench trial that resulted in the extension, the circuit court erroneously admitted hearsay evidence. She also argues that the court failed to make factual findings to support the statutory form of dangerousness T.L.M. satisfied, contrary to our supreme court's direction in *Langlade County v. D.J.W.*, 2020 WI 41, 391 Wis. 2d 231, 942 N.W.2d 277. I conclude that the court did not erroneously admit a psychiatrist's testimony and report and that, although it was error for the court to admit a document compiled by a Grant County emergency services supervisor, this error was harmless. I further conclude that the court adequately conveyed that it found that T.L.M. would be dangerous to herself if treatment were to be withdrawn under the first statutory standard—dangerousness to self under WIS. STAT. § 51.20(1)(a)2.a. and the recommitment standard in § 51.20(1)(am)—and identified the admissible evidence supporting this determination. Accordingly, I affirm.

## BACKGROUND

¶2      T.L.M. was the subject of an emergency detention in April 2023. In May 2023, T.L.M. stipulated to commitment, and the circuit court ordered her committed for six months. This commitment was extended for an additional year effective November 2023.

---

[2] T.L.M. appeals the order that both extends her commitment and requires that she be involuntarily medicated, correctly noting that, because a valid commitment order is a necessary prerequisite to a valid involuntary medication order, vacating the commitment requirement "necessarily vacates the medication [requirement]." *See* WIS. STAT. § 51.61(1)(g). T.L.M. challenges only the commitment requirement in the order in her appellate briefing. Because I affirm the commitment requirement, and T.L.M. makes no independent argument as to the involuntary medication requirement, I affirm the order in its entirety.

¶3 In September 2024, Grant County again petitioned for T.L.M.'s commitment to be extended, and a contested trial was held. The County first called a psychiatrist who had interviewed T.L.M. and prepared a report after reviewing records. The psychiatrist testified that during the interview, T.L.M. seemed to be having auditory hallucinations, that her thinking was rambling and disorganized, and that she believed a chip had been implanted in her head. The psychiatrist diagnosed T.L.M. with schizoaffective disorder, and testified that this is a mental illness treatable with psychotropic medication. When asked whether the medications T.L.M. had been given were improving her condition, the psychiatrist replied that "it's unclear how much they're helping her because … when I evaluated her she was not doing well. So, I'm assuming there are going to be medication changes to try to better address her psychosis." The psychiatrist also testified that T.L.M. told the psychiatrist that T.L.M. did not believe she had a mental illness and did not need medication.

¶4 The psychiatrist testified that T.L.M. was dangerous to herself under the first statutory standard of dangerousness and the additional statutory standard for recommitment hearings.[3] When the County asked the psychiatrist what facts supported this conclusion, she began her reply by saying that T.L.M. had "jumped out of two windows now." T.L.M. objected on hearsay grounds. The court ruled

---

[3] As discussed further below, the first standard of dangerousness is set forth in WIS. STAT. § 51.20(1)(a)2.a. (the individual is dangerous because the individual "[e]vidences a substantial probability of physical harm to himself or herself as manifested by evidence of recent threats of or attempts at suicide or serious bodily harm"), and the recommitment standard is set forth in § 51.20(1)(am) (the "recent overt act, attempt or threat to act … may be satisfied by a showing that there is a substantial likelihood … that the individual would be a proper subject for commitment if treatment were withdrawn").

that "[i]t is hearsay" and observed that "although an expert may rely on hearsay to reach opinions, it's not automatically admissible." The court went on:

> I will nonetheless overrule the objection. The strength and credibility of an expert's opinion is based upon the bases for it. And in this instance, it is important for the Court to understand why [the psychiatrist] believes what she believes. And to the extent those facts may be wrong, then that would undermine her opinion. To the extent those facts may be right, it would support her opinion.
>
> And so I'm not going to receive them for the truth of them, but for the fact that she relied upon them. And then we'll establish whether they are or [are] not accurate.

The court received the psychiatrist's report into evidence for the same purpose and with the same restrictions as to how it could be considered.

¶5 In her subsequent testimony, the psychiatrist clarified that, during their interview, T.L.M. herself told the psychiatrist about an incident in June 2024 in which T.L.M. jumped from the second-story window of her group home. The psychiatrist testified that T.L.M. told the psychiatrist that she was "suicidal" at this time "[b]ecause Selena, this is her delusion, was wired to the building." The psychiatrist also testified that, during their interview, T.L.M. told her about the other jumping incident, which occurred in 2023 and led to the initial emergency detention and commitment of T.L.M.; in that incident, T.L.M. jumped from a balcony at the county jail and broke her ankle. The psychiatrist testified that T.L.M. was "jumping because of her psychotic beliefs" and that "with the continuing psychosis, I do believe … if she were to find another window or a balcony, she might be at risk of jumping off of it."

¶6 The County's other witness was an emergency services supervisor; she testified that her role in mental health commitments is to "to oversee the

clinical pieces … and then provide input on clinical decision making." The supervisor testified that T.L.M. told the supervisor within the previous 30 days that if T.L.M. were released from the facility where she was then confined, she would "use drugs," and that T.L.M. made "other statements that she would kill herself."

¶7 The County also offered as evidence a report that the supervisor had generated. T.L.M. objected in part, saying that though the document might be admissible as "business records," "the information contained in it seems like there might be multiple levels of hearsay" such that it should not be "accepted as factual truth." The circuit court responded that it would "receive all of its content for the truth of the matter asserted." The court continued:

> It's a medical record maintained contemporaneously on an ongoing basis, and it has ample circumstances that guarantee its trustworthiness, particularly given the fairly low level of detail that's included in it. And to the extent there may be some details, for instance, in the medical history of hospitalizations that may be off, that deviation is not consequential. It's a document intended to capture the big picture, and it does that sufficiently that I find it comes under the residual hearsay exception to the extent it's not otherwise admissible.

¶8 At the close of the hearing, the circuit court stated that it would extend T.L.M.'s commitment. The court determined that "it is clear that [T.L.M.] has significant mental health issues that make her a danger to herself." The court explained that:

> [I]n a lot of cases, the dangerousness at this point is a little nebulous because it's based on past acts. Here we have direct evidence of current dangerousness in the statements she makes to [the community services supervisor], which are not hearsay because they're a statement of a party opponent. The statements she makes to [the psychiatrist] when they come from [T.L.M.] are not hearsay because

5

they're a statement of a party opponent.  And so, those are evidence of the content, the truth of the statements made.

¶9      The circuit court entered an order extending T.L.M.'s commitment by one year.  The order, which consists of a standard form with check boxes and space for information to be filled in, indicates that T.L.M. is dangerous under the recommitment standard: that is, she is dangerous because she poses a substantial probability of physical harm to herself, in that she likely would be a proper subject for commitment if treatment were withdrawn.  *See* WIS. STAT. § 51.20(1)(a)2.a. and (am); Wisconsin Circuit Court Form ME-911, Order of Commitment/Extension of Commitment/Dismissal.  In its order, the court also required that T.L.M. be involuntarily medicated.  T.L.M. appeals.

## DISCUSSION

### I.  General principles and standard of review

¶10     This case requires review of the circuit court's decision to admit evidence over a hearsay objection.  A court's decision to admit hearsay is discretionary, *State v. Stevens*, 171 Wis. 2d 106, 111, 490 N.W.2d 753 (Ct. App. 1992), and this court will uphold the circuit court's decision if it "examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach." *Appleton Post-Crescent v. Janssen*, 149 Wis. 2d 294, 302-03, 441 N.W.2d 255 (Ct. App. 1989).  An error in admitting hearsay is harmless if there is no reasonable probability that excluding the evidence would have resulted in a different outcome. *State v. Kleser*, 2010 WI 88, ¶94, 328 Wis. 2d 42, 786 N.W.2d 144.

¶11     This case also requires review of whether the circuit court fulfilled the mandate in *D.J.W.*: a duty, in cases involving the extension of an existing

commitment, "to make specific factual findings with reference to the subdivision paragraph of [WIS. STAT.] § 51.20(1)(a)2. on which the recommitment is based." ***D.J.W.***, 391 Wis. 2d 231, ¶40. The five subdivision paragraphs of § 51.20(1)(a)2. lay out the five statutory forms of dangerousness, which is one of the elements that must be proved to commit a person under WIS. STAT. ch. 51. ***D.J.W.***, 391 Wis. 2d 231, ¶¶29-30. Each of the paragraphs also specifies an act or pattern of acts that must be "recent" to support a finding of dangerousness. § 51.20(1)(a)2. However, § 51.20(1)(am) removes the requirement of recent dangerous behavior when, immediately prior to the commitment proceedings, the person has been receiving treatment under various circumstances, including a prior commitment under ch. 51. This provision "recognizes that an individual receiving treatment may not have exhibited any recent overt acts or omissions demonstrating dangerousness because the treatment ameliorated such behavior, but if treatment were withdrawn, there may be a substantial likelihood such behavior would recur." ***D.J.W.***, 391 Wis. 2d 231, ¶33 (quotation marks and citation omitted). The order in this case relies on this manner of finding dangerousness, and so I must also consider whether the circuit court made adequate findings on this point. Whether the circuit court adequately fulfilled the ***D.J.W.*** mandate is a question of law that the appellate court reviews independently. ***Nottelson v. DILHR***, 94 Wis. 2d 106, 116, 287 N.W.2d 763 (1980).

## II. Admission of evidence over hearsay objection

¶12 T.L.M. objected on hearsay grounds to testimony and documentary exhibits associated with both the psychiatrist and the emergency services supervisor. As to the psychiatrist, T.L.M. acknowledges that some of the information the psychiatrist conveyed in her testimony and report had been told to her by T.L.M. during an interview between them, and that these statements

constitute admissions by a party opponent. Admissions by a party opponent are not hearsay. WIS. STAT. § 908.01(4)(b)1. Specifically, T.L.M. acknowledges that she told the psychiatrist about the incident in which she jumped from a second-story window. However, as noted above, the psychiatrist testified that T.L.M. told her about *both* that incident and the incident in which T.L.M. jumped off a balcony. Thus, when the psychiatrist testified that both incidents occurred, she was relaying the statements of a party opponent, and this testimony was not hearsay.

¶13 T.L.M. argues that the psychiatrist's testimony went further than the statements T.L.M. had given, because it incorporated details of both incidents beyond what T.L.M. had told the psychiatrist, and which the psychiatrist must have learned about by other sources. The record is not clear on this point. The psychiatrist testified on cross examination that she had not been present for either incident, but that T.L.M. "told me; she told me about them." From this testimony, I cannot determine what facts or details T.L.M. did or did not convey to the psychiatrist during the interview. I therefore conclude that T.L.M. has not shown that the psychiatrist's testimony about either of the two jumping incidents was hearsay.

¶14 T.L.M. also argues that the circuit court erred in admitting the psychiatrist's report because it contained information that came from other sources and was therefore hearsay. However, as T.L.M. acknowledges, otherwise inadmissible facts relied on by an expert witness may be admitted, in the court's discretion, to allow the factfinder to "evaluate the expert's opinion or inference" rather than for the truth of the matter asserted. WIS. STAT. § 907.03. As recited above, this was the basis the court gave for admitting the entirety of the psychiatrist's report, as well as that portion of the psychiatrist's testimony that was

hearsay. T.L.M. suggests that the court nevertheless erred because it stated it was admitting the psychiatrist's hearsay evidence "to support or undermine" her opinion, which T.L.M. suggests is a broader purpose than the statute permits. In context, however, the court's statement appears to be a rephrasing of the statutory standard for admitting otherwise inadmissible evidence given by an expert: to assist in "evaluat[ing] the expert's opinion or inference." § 907.03. Accordingly, I conclude that neither the psychiatrist's testimony nor her report was improperly admitted.

¶15 The emergency services supervisor's report is another matter. This document, as the supervisor testified, was the product of entries by employees at the community services agency; the supervisor affirmed that "anybody that's working on the file can input information in that document." The circuit court admitted the document as a record of regularly conducted activity under WIS. STAT. § 908.03(6). This exception to the hearsay rule is sometimes called the "business records exception." *Bank of America NA v. Neis*, 2013 WI App 89, ¶6 n.5, 349 Wis. 2d 461, 835 N.W.2d 527. It permits the introduction of various types of records if the records were made at or near the time of the matters they concern by a person with knowledge of these events, if the records were created in the course of a regularly conducted activity. § 908.03(6). That is, it makes the out-of-court declaration of this record creator, in creating the record, admissible despite the fact that it would otherwise be hearsay.

¶16 The emergency services supervisor's report is not admissible under this exception because, as T.L.M.'s trial counsel accurately observed, it contains multiple levels of hearsay. "When the report contains out-of-court assertions by others, an additional level of hearsay is contained in the report and an exception for that hearsay must also be found. That is, the reports cannot establish more

9

than their maker could if [the maker] was testifying in court on their subject matter." *Mitchell v. State*, 84 Wis. 2d 325, 330, 267 N.W.2d 349 (1978) (citation omitted). "The rule requires … that all of the declarants involved in the making of the [report] be part of the organization which prepared it. If one of the declarants is not part of the organization, an additional level of hearsay is presented which must fall within some other exception." *State v. Gilles*, 173 Wis. 2d 101, 113-14, 496 N.W.2d 133 (Ct. App. 1992) (citations omitted). The report at issue here contains information that, on its face, was recorded by employees of many different organizations spanning multiple counties and states over the course of more than 20 years. The fact that the County's community services agency obtained and compiled all of this information from these other sources does not bring it within the business records exception.

¶17    The circuit court also ruled that the report fell within the residual hearsay exception, which permits the introduction of out-of-court statements "not specifically covered by any of the foregoing exceptions but having comparable circumstantial guarantees of trustworthiness." WIS. STAT. § 908.03(24). The court did not explain what guarantees it believed the document possessed. Given that the document contains dozens of assertions made by employees of multiple organizations over two decades—many of them unattributed to any particular source—I conclude that this ruling constituted an erroneous exercise of discretion by the circuit court.

¶18    However, I also conclude that this error was harmless beyond a reasonable doubt. Though the circuit court made reference to T.L.M.'s history of mental illness and dangerous behavior, its remarks focused on the dangerous acts T.L.M. had recently and undisputedly engaged in, as well as her recent threats to harm herself—all of which were proved by admissible non-hearsay evidence.

Given the proximity in time of these acts, there is no reasonable possibility that the exclusion of the inadmissible evidence about T.L.M.'s more distant history would have affected the court's determination that she posed a danger to herself.

### III. Satisfaction of the *D.J.W.* mandate

¶19 T.L.M. also argues that the circuit court failed to fulfill the mandate in ***D.J.W.***, 391 Wis. 2d 231. In that case, our supreme court ruled that circuit courts in recommitment proceedings have a duty "to make specific factual findings with reference to the subdivision paragraph of [WIS. STAT.] § 51.20(1)(a)2. on which the recommitment is based." ***D.J.W.***, 391 Wis. 2d 231, ¶40. The court gave three reasons for this requirement: to give effect to the statutory language; to ensure that sufficient evidence is adduced to justify the deprivation of liberty inherent in a commitment; and to allow for meaningful appellate review, "specifically with regard to challenges based on the sufficiency of the evidence." *Id.*, ¶¶41-44.

¶20 Here, T.L.M. does not appear to dispute that the circuit court identified the "subdivision paragraph … on which the recommitment [was] based." All dangerousness-related evidence given at the hearing concerned T.L.M.'s acts that caused or threatened physical harm to herself: the two incidents of jumping from high places, just four months and about one year, respectively, before the hearing, and one of which resulted in a broken ankle; and her recent statements that she would kill herself if released from confinement. This evidence all goes to the first subdivision paragraph of "a substantial probability of physical harm to [T.L.M.] as manifested by evidence of recent threats of or attempts at suicide or serious bodily harm." *See* WIS. STAT. § 51.20(1)(a)2.a. Moreover, the

11

court, in rendering its decision, specifically said that "it is clear that [T.L.M.] has significant mental health issues that make her a danger to herself."

¶21 Rather, T.L.M. argues that three circumstances combined to deprive T.L.M. of the "clarity and extra protection" and "sound judicial decision making" that *D.J.W.*'s rule aims to secure. These are: (1) the circuit court's admission of hearsay; (2) the court's failure to specify which testimony or evidence it was relying on in finding dangerousness; and (3) the fact that the court expressed doubt that the treatment T.L.M. was receiving was working while also concluding that T.L.M. was dangerous under the recommitment standard, which required it to find that she would *become* dangerous if treatment were withdrawn.

¶22 Regarding the first two circumstances T.L.M. identifies, while the circuit court's remarks may be brief, they do convey that it was relying on the two recent instances of T.L.M. jumping from high places with evident intent to injure or kill herself, as well as her recent threats to harm herself, to conclude that she was dangerous. And, as noted above, there was non-hearsay (and uncontroverted) evidence that these events and statements occurred, in the form of T.L.M.'s party-opponent statements to both the psychiatrist and the emergency services supervisor.

¶23 Regarding the third circumstance, the circuit court's finding T.L.M. dangerous using the WIS. STAT. § 51.20(1)(am) route—which, again, permits a finding of dangerousness based not on recent dangerous acts or threats, but on the likelihood that dangerous behavior would recur if treatment were withdrawn—I understand T.L.M. essentially to be arguing that a clearer statement would have been preferable. The order extending T.L.M.'s commitment has a box checked indicating that the court was finding not that T.L.M. had recently acted or

12

threatened to act to cause herself death or serious bodily harm, but that she would likely do so if treatment were withdrawn.  T.L.M. argues that the court's remarks did not explicitly tie any findings about her dangerousness to the potential withdrawal of treatment.  However, as related above, the court relied on the evidence that T.L.M. had most recently jumped out a window when she was "suicidal" four months before the hearing, while her prior commitment order was in effect.  And, the court both noted the psychiatrist's testimony that the treatments T.L.M. was then undergoing did not seem to be working well and expressed hope that different treatments might get better results, implicitly acknowledging that T.L.M. required treatment so that she would no longer be dangerous to herself.

¶24    In light of the straightforward evidence in this case—that T.L.M. had, within the past 15 months, including just four months before the hearing, jumped from both a window and a balcony with the intent to seriously harm herself; the psychiatrist's testimony that she did so due to psychosis; the psychiatrist's testimony from which it can be reasonably inferred that changes in T.L.M.'s medication can be made "to better address her psychosis"; and T.L.M.'s recent statements to the emergency services supervisor that she would commit suicide if released from confinement—I conclude that the circuit court was justified in entering the order finding that T.L.M. would be dangerous to herself if treatment were withdrawn, and that the court satisfied the mandate in ***D.J.W.***, 391 Wis. 2d 231.

## CONCLUSION

¶25    For the reasons stated, the circuit court's order extending T.L.M.'s commitment and requiring her to be involuntarily medicated is affirmed.

*By the Court.*—Order affirmed.

13

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.