# COURT OF APPEALS
# DECISION
# DATED AND FILED

## September 16, 2025

**Samuel A. Christensen**
**Clerk of Court of Appeals**

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP1843**

Cir. Ct. No. **2023GN3**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

---

IN THE MATTER OF THE GUARDIANSHIP OF **K. B.**:

BROWN COUNTY,

    PETITIONER-RESPONDENT,

  V.

K. B.,

    RESPONDENT-APPELLANT.

---

APPEAL from an order of the circuit court for Brown County: TIMOTHY A. HINKFUSS, Judge. *Reversed.*

¶1 GILL, J.[1] Kathy[2] appeals an order continuing her protective placement pursuant to WIS. STAT. ch. 55. Kathy argues that Brown County failed

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(d) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version.

to present sufficient evidence establishing that she is in continuing need of protective placement, contrary to WIS. STAT. §§ 55.08(1) and 55.10(4)(d). For the reasons that follow, we agree with Kathy and reverse the order continuing her protective placement.

## BACKGROUND

¶2 In January 2023, the County filed petitions for guardianship and protective placement of Kathy, alleging that she suffered from a major neurocognitive disorder, "including but not limited to [i]ntellectual [d]isorder/[d]evelopmental [d]isability along with executive function impairment due to substance use." An examining psychologist's report indicated that Kathy had an extensive criminal history, that she had previously been "working out" a plan to kill herself, and that she had been physically and sexually assaulted. Following a hearing, the circuit court entered orders for guardianship due to incompetency and for protective placement.

¶3 In January 2024, the County, through Caryn Forrest filed a petition for an annual review of Kathy's protective placement. Pursuant to WIS. STAT. § 55.18(1)(a), an accompanying review report ("review") was written and submitted by Forrest. Kathy requested an independent medical evaluation and asked that the protective placement be terminated.[3] The Court appointed psychologist L. W. Cole to examine Kathy.

---

[2] For ease of reading, we refer to the appellant in this confidential matter using a pseudonym, rather than her initials.

[3] Kathy did not request that her guardianship be terminated.

¶4 A due process hearing was held in May 2024, during which Dr. Cole and Robin Schwartz, a caseworker for the County, testified.[4] Cole testified that he examined Kathy, and he summarily opined that Kathy required continuing protective placement due to her intellectual disorder and unspecified mood disorder. Specifically, Cole stated that Kathy has a primary need for residential care and custody because "she has rather significant impairments that would put her in danger" and has "a history of being exploited." When asked if Kathy was "so totally incapable" of providing for her own care or custody as to create a substantial risk of serious harm to herself or others, Cole responded in the affirmative. Cole opined that Kathy had "moderate to severe" impairment in her executive functioning and "[e]motional/[b]ehavioral" functioning. Cole's report was admitted into evidence without objection.

¶5 Schwartz testified that she worked with Kathy "[f]or the annual review," that she "went … to visit with [Kathy] and meet with staff, and [that] they had reported that due to her previous behaviors she can become very aggressive and violent toward staff." When asked how many staff members she spoke with, Schwartz responded that she spoke to two staff members. Schwartz then opined that Kathy's protective placement should continue at her current level of supervision.

¶6 The County then noted that a written annual review of Kathy's protective placement was prepared by Forrest and asked Schwartz if her testimony was consistent with Forrest's review. Schwartz stated that her testimony was

---

[4] Prior to taking testimony, the circuit court noted that the annual petition for review was submitted by Forrest and asked if she was present, to which the County replied, "No. [Forrest] is no longer with the [C]ounty."

3

consistent with the review and that the only changes she would make to the review would be to update it to include information regarding recent incidents. The County moved to have the review entered into evidence, to which Kathy objected, asserting that the report was hearsay.

¶7    The circuit court noted that WIS. STAT. § 55.18(1)(a) requires the County to prepare an annual review of the status of each individual that has been protectively placed. The court ruled

> I'm going to admit the report. And I do recognize that it is hearsay, but she does work for adult protective services. The person who wrote the report worked for adult protective services, the person that wrote the report has moved on. I think it's a business exception to the hearsay rule because the witness is now the case manager of [Kathy] and she has to know the background and review the file to be the case manager.

The review was then received into evidence.[5]

¶8    The circuit court ultimately found that Kathy continued to meet the standards for protective placement, that she had a primary need for residential care and custody as a result of a developmental disability and a serious and persistent mental illness, and that she had a disability that is permanent or likely to be permanent. The court stated that it based those findings on Dr. Cole's report and testimony. The court entered an order continuing Kathy's protective placement. Kathy now appeals.

---

[5] The circuit court later clarified that it admitted the review as a "record of regularly conducted activity" under WIS. STAT. § 908.03(6).

**DISCUSSION**

¶9      Kathy argues that the County failed to present sufficient evidence to support the continuation of her protective placement. Specifically, she contends that the County failed to prove that she has a primary need for care and custody, that she is so totally incapable of providing for her own care so as to create a substantial risk of serious harm to herself, and that she has a disability that is permanent or likely to be permanent.[6] Kathy also argues that the circuit court erroneously exercised its discretion when it admitted Forrest's annual review into evidence over her hearsay objection.

¶10      Whether the County presented sufficient evidence to support Kathy's protective placement presents a mixed standard of review. *See Walworth County v. Therese B.*, 2003 WI App 223, ¶21, 267 Wis. 2d 310, 671 N.W.2d 377. "The circuit court's factual findings will not be overturned unless clearly erroneous." *Id.* (citation omitted). Whether the evidence satisfies the legal standard for protective placement is a question of law that we review de novo. *Id.*

---

[6] Kathy does not contest that she is an adult who has been determined to be incompetent by a circuit court under WIS. STAT. § 55.08(1)(b).

The County argues that Kathy forfeited her right to challenge the sufficiency of the evidence regarding whether she has a primary need for care and custody, as she "never asked [Dr.] Cole about the residential care and custody element and accepted Cole's entire, voluminous report subject to any cross[-]examination."

We reject the County's argument. WISCONSIN STAT. § 805.17(4) provides, "In actions tried by the court without a jury, the question of the sufficiency of the evidence to support the findings may be raised on appeal whether or not the party raising the question has objected in the trial court to such findings or moved for new trial." As Kathy correctly notes, her protective placement hearing constitutes an action that was heard without a jury; therefore, she has not forfeited her argument to the sufficiency of the evidence. *See Waukesha County v. M.A.C.*, 2024 WI 30, ¶67, 412 Wis. 2d 462, 8 N.W.3d 365.

¶11    The petitioner in a WIS. STAT. ch. 55 action must prove the following by clear and convincing evidence:

> (a) The individual has a primary need for residential care and custody.
>
> (b) The individual is a minor who is not alleged to have a developmental disability and on whose behalf a petition for guardianship has been submitted, or is an adult who has been determined to be incompetent by a circuit court.
>
> (c) As a result of developmental disability, degenerative brain disorder, serious and persistent mental illness, or other like incapacities, the individual is so totally incapable of providing for his or her own care or custody as to create a substantial risk of serious harm to himself or herself or others. Serious harm may be evidenced by overt acts or acts of omission.
>
> (d) The individual has a disability that is permanent or likely to be permanent.

WIS. STAT. § 55.08(1); *see also* WIS. STAT. § 55.10(4)(d).

¶12    Having a primary need for residential care and custody means that the subject individual must have a primary need "(1) to have his or her daily needs provided for in a residential setting; and (2) to have someone else exercising control and supervision in that residential setting for the purpose of protecting the person from abuse, financial exploitation, neglect, and self-neglect." *Jackson Cnty. DHHS v. Susan H.*, 2010 WI App 82, ¶16, 326 Wis. 2d 246, 785 N.W.2d 677. "In determining whether the individual has a primary need for protective placement, the [circuit] court must consider the availability of treatment or protective services, and order protective placement only if it is the least restrictive alternative." *Zander v. County of Eau Claire*, 87 Wis. 2d 503, 514, 275 N.W.2d 143 (Ct. App. 1979).

¶13 For the purpose of establishing dangerousness under WIS. STAT. § 55.08(1)(c), "care" "means that the person's incapacity to provide for his or her daily needs creates a substantial risk of serious harm to the person or others." *Susan H.*, 326 Wis. 2d 246, ¶17. Similarly, "custody" under § 55.08(1)(c) means "that the person cannot provide for himself or herself the protection from abuse, financial exploitation, neglect, and self-neglect that the control and supervision by others can provide." *Susan H.*, 326 Wis. 2d 246, ¶17. Further, "[t]he risk of harm must be substantial. Mere speculation as to difficulties [a subject] may encounter is not sufficient. Specific harm must be foreseeable to fulfill this requirement. Furthermore, the foreseeable harm must be serious." *Zander*, 87 Wis. 2d at 514-15.

¶14 Kathy contends that the County failed to prove that she has a primary need for care and custody because the County "simply failed to offer any evidence of the potential services available to Kathy, let alone why they would be inadequate to address Kathy's needs." Kathy further notes that the only evidence on this element was Dr. Cole's testimony that Kathy has a primary need for residential care and custody because he "believe[s] that she has rather significant impairments that would put her in danger" and that "[s]he does have a history of being exploited, and [he] believe[s] she needs protection." Kathy characterizes this testimony as being "vague" and offering "no explanation for how and when Kathy has been exploited, or how the exploitation was tied to her impairments."[7]

---

[7] While Dr. Cole's report was admitted into evidence, the report lacks the sufficient factual details for us to conclude that Kathy has a primary need for care and custody under WIS. STAT. § 55.08(1)(a) or that she poses a substantial risk of serious harm to herself or others under § 55.08(1)(c).

¶15     Similarly, Kathy argues that the County failed to prove that she poses a substantial risk of serious harm to herself or others under WIS. STAT. § 55.08(1)(c) because the County failed to present any evidence that she is incapable of caring for herself.  Kathy notes that the only evidence in this regard comes from Dr. Cole's testimony, where in response to the question, "Do you believe she's so totally incapable of attending to her own care and custody [that she] is at greatest substantial risk to herself—of serious harm to herself or anyone else?"  Cole responded, "Yes, I believe she does."  Kathy also notes that Schwartz testified that Kathy is able to complete all of her own activities of daily living ("ADLs").

¶16     We agree with Kathy that the County failed to prove that she has a primary need for care and custody under WIS. STAT. § 55.08(1)(a) or that she poses a substantial risk of serious harm to herself or others under § 55.08(1)(c).[8] As Kathy correctly notes, there is insufficient evidence in the record to support the circuit court's finding that she has a primary need for care and custody, as there was no evidence presented regarding the services that Kathy needs or those that are available to her.  Doctor Cole's conclusory statements that Kathy "has rather significant impairments" and has "a history of being exploited" do not, as a matter

---

[8] Kathy also argues that the County failed to present sufficient evidence to prove that her disability is permanent or likely to be permanent.  Kathy contends that the only testimony on this issue was Dr. Cole's statement that "it may be possible for her to develop more stability and possibly learn independent living skills that could result in a much less restrictive setting."  We note, however, that in his report, Cole checked a box indicating that Kathy's disability is permanent or likely to be permanent.  Nevertheless, because we conclude that the evidence presented at the hearing was insufficient to prove that Kathy has a primary need for care and custody or poses a substantial risk of serious harm to herself or others, we need not and do not address this issue.  *See Turner v. Taylor*, 2003 WI App 256, ¶1 n.1, 268 Wis. 2d 628, 673 N.W.2d 716 (noting that we need not address all issues when the resolution of one of those issues is dispositive).

of law, rise to the level of clear and convincing evidence. Given these conclusory statements, we cannot conclude that the current protective placement is the least restrictive setting for Kathy. *See* WIS. STAT. § 55.02(1)(a)1. ("The protective placement system shall be designed to encourage independent living and to avoid protective placement whenever possible.").

¶17 Similarly, there is insufficient evidence to support the circuit court's finding regarding the risk of harm that Kathy poses to herself or others, as the record indicates that Kathy is able to complete all ADLs. While there were vague references to Kathy having previously been exploited, neither Dr. Cole nor Schwartz explained Kathy's history of exploitation. We therefore, cannot conclude that her history of exploitation rises to the level of a current substantial and specific foreseeable risk of harm. *See **Zander***, 87 Wis. 2d at 514-15.

¶18 The County attempts to fill in some of the missing testimonial details by pointing to evidence contained in Forrest's annual review. Kathy responds by arguing that Forrest's review was inadmissible hearsay and cannot be relied upon as competent evidence.

¶19 We examine the circuit court's decision to admit evidence for an erroneous exercise of discretion. ***State v. Stevens***, 171 Wis. 2d 106, 111, 490 N.W.2d 753 (1992). A court's discretionary decision will be upheld if the court "examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach." ***Appleton Post-Crescent v. Janssen***, 149 Wis. 2d 294, 302-03, 441 N.W.2d 255 (Ct. App. 1989).

¶20 Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter

9

asserted." WIS. STAT. § 908.01(3). Hearsay is inadmissible unless an exception applies. WIS. STAT. § 908.02. One such exception, colloquially referred to as the "business records exception," is found in WIS. STAT. § 908.03(6), which provides:

> A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, all in the course of a regularly conducted activity, as shown by the testimony of the custodian or other qualified witness, or by certification that complies with [WIS. STAT. §] 909.02(12) or (13), or a statute permitting certification, unless the sources of information or other circumstances indicate lack of trustworthiness.

However, when a report "contains out-of-court assertions by others, an additional level of hearsay is contained in the report and an exception for that hearsay must also be found. That is, the reports cannot establish more than their maker could if he [or she] was testifying in court on their subject matter." *Mitchell v. State*, 84 Wis. 2d 325, 330, 267 N.W.2d 349 (1978); WIS. STAT. § 908.05.

¶21     Forrest's review states that she contacted multiple staff members and referenced other documents in completing her review report, and the County does not assert any hearsay exceptions for this second level of hearsay. Further, we note that "[r]ecords prepared in anticipation of litigation traditionally have been deemed outside the reach of the business records exception." *State v. Williams*, 2002 WI 58, ¶38, 253 Wis. 2d 99, 644 N.W.2d 919.

¶22     The County concedes that the circuit court's ruling regarding the business records exception "was likely not proper" in the context of Forrest's review. The County asserts, however, that the court "was still correct in admitting the annual review" because WIS. STAT. § 55.18(1)(a) requires the County to

annually review the status of each ward that is protectively placed and to file that report with the court that ordered the protective placement.

¶23 We disagree. As Kathy correctly notes, WIS. STAT. § 55.18(1)(a) is not a rule of evidence. Indeed, this court has previously concluded that "in-court testimony is required from the author of [a guardianship] report so the person potentially subject to the guardianship can cross-examine the witness. The same principles must also apply to a contested protective placement petition." *J.C. v. R.S.*, No. 2022AP1215, unpublished slip op., ¶26 (WI App Feb. 16, 2023) (citing *R.S. v. Milwaukee County*, 162 Wis. 2d 197, 207, 210, 470 N.W.2d 260 (1991)).[9] "If the legislature had intended for the report to be admitted into evidence at trial as an exception to the hearsay rule, it would have said so. It did not." *R.S.*, 162 Wis. 2d at 207. The County does not cite any legal precedent suggesting that hearsay that has not been previously subjected to adjudication is admissible at an individual's protective placement hearing.[10]

---

[9] Unpublished opinions authored by a single judge and issued on or after July 1, 2009, may be cited for their persuasive value. *See* WIS. STAT. RULE 809.23(3)(b).

[10] Although the County does not argue these cases in its briefs, we are aware of *Douglas County v. J.M.*, No. 2022AP2035, unpublished slip op. (WI App Nov. 28, 2023), *review denied* (WI App Apr. 16, 2024) and *Pierce County v. P.C.A.*, No. 2024AP1367, unpublished slip op. (WI App July 1, 2025), in which this court concluded that "all reports and documents that have been admitted into evidence in the individual's prior protective placement proceedings may be relied upon, in addition to any witness testimony introduced during the individual's [current] due process hearing." *P.C.A.*, No. 2024AP1367, ¶31 n.7. We distinguish this case from *J.M.* and *P.C.A.* by noting that the author of the admitted and relied upon reports testified at the protective placement hearings in those cases, which afforded the subject individual the right to cross-examine the witness, as is provided by WIS. STAT. §§ 55.10(4) and 54.42(2). *See J.M.*, No. 2022AP2035, ¶¶5, 27 (relying, in part, on the County's 2021 annual report to support the subject's continued protective placement and noting that the report was admitted into evidence following a full due process hearing); *see also P.C.A.*, No. 2024AP1367, ¶¶11, 19, 45 (relying, in part, on Dr. Miller's reports to support the subject's continued protective placement and noting that Dr. Miller testified at hearings both times that he submitted reports).

¶24 Accordingly, we conclude that the circuit court erroneously exercised its discretion when it admitted Forrest's report into evidence without Forrest testifying and over Kathy's objection. Without the information provided by Forrest's report, there is insufficient evidence to conclude that the County met its burden of proving that Kathy has a primary need for care and custody and poses a substantial risk of serious harm to herself or others under WIS. STAT. § 55.08(1)(a) and (1)(c), respectively. Accordingly, we reverse the order continuing Kathy's protective placement.

*By the Court.*—Order reversed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.